IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| | Chapter 11 |
| | Case No. 10-11078-SSC |
| RCC NORTH, LLC, | |
| | (Not for Publication- Electronic Docketing ONLY) |
| Debtor. | MEMORANDUM DECISION |

I. PRELIMINARY STATEMENT

On July 11, 2011, shortly before this Court was to conduct a hearing on the Motion for Stay Pending Appeal, Motion to Suspend Bankruptcy Proceedings, and other relief, RCC North, LLC, the Debtor herein, filed a Motion to Disqualify this judge from hearing any further matters in this case. At the hearing on July 11, on the Motion for Stay Pending Appeal, counsel for U.S. Bank, N.A. as Trustee for the Registered Holders of Merrill Lynch Mortgage Trust 2006-C1 Commercial Mortgage Pass-Through Certificates, Series 2006-C1 ("U.S. Bank") stated that a Motion to Disqualify had just been filed by Debtor's counsel. The Court inquired whether counsel for U.S. Bank was ready to argue the Motion, and he answered in the affirmative. Since the Debtor had requested an emergency hearing on the matter, the Court then asked counsel for the Debtor to present argument on the Motion to Disqualify.[1] Counsel for U.S.

---

**1.** Debtor's counsel was initially reluctant to present argument. He stated that he "was unprepared." However, he had requested an emergency hearing on the matter. Moreover,

1

Bank then presented his argument on the Motion. The Court thereafter took the matter under advisement. This is the Court's decision on the Motion to Disqualify. To the extent necessary, the Court has set forth its findings of fact and conclusions of law. Bankruptcy Rule 7052. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1334 and 157 (West 2011).

## II. DISCUSSION

The Debtor contends that disqualification is required because the Court (1) "stopped" the contested confirmation hearing on Debtor's plan of reorganization "in mid-witness;" (2) lifted the automatic stay "apparently based on the lack of certain funds being on deposit;" (3) "when faced with a motion to reconsider," the Court "effectively selected" the "creditor's reorganization plan by placing the Debtor in a position of harming its right to appeal or having the creditor's plan confirmed;" and (4) "[returned] from vacation to hear a simple and routine motion."

*1. The Court's actions concerning the contested confirmation hearing.*

The Court shall address, under this Section, why the Court denied confirmation of the Debtor's plan and lifted the automatic stay. (Points 1 and 2 listed above.) The Court has set forth in a separate decision on the Debtor's Motion for Stay Pending Appeal the reasons why confirmation of the Debtor's plan was denied and why it granted U.S. Bank's Motion for Relief

---

Debtor's counsel stated later at the hearing that he had reviewed the Motion, at the time he signed it, and felt that the Motion was consistent with the standards under Bankruptcy Rule 9011. Therefore, Debtor's counsel was clearly familiar with the arguments presented in the Motion. Then Debtor's counsel stated that he needed to "notice the matter out." However, the other critical party to the Motion was present in the Courtroom and ready to argue the Motion. Rather than leave any ambiguity in the record as to the Court's ability to proceed in the RCC North case, the Court proceeded with argument on the Debtor's Motion. Given the argument of Debtor's counsel, it was clear that he had reviewed the matter and was ready to argue. Moreover, a Motion to Disqualify does not necessarily require oral argument, so the Court could have ruled on the Motion without any argument at all. U.S. v. Zagari, 419 Supp. 494 (D.C.Cal 1976).

2

from the Automatic Stay.[2] That decision is incorporated herein, including the factual findings and conclusions of law, and is a part of this decision. The Debtor has incorrectly characterized what happened at the contested confirmation hearing. After committing to have $8 million on hand at the start of the contested confirmation hearing, or the Debtor would not proceed to confirmation and the automatic stay would be vacated as to U.S. Bank, the Debtor obfuscated the fact that it had insufficient funds on hand. When the Court directly asked Debtor's counsel whether the $8 million was in an account, Debtor's counsel finally conceded that it was not.

The second critical issue raised for the first time at the contested confirmation hearing was that the Debtor and a related entity, RCC South, LLC, Case 2:10-bk-23475-SSC, had chosen to open a second escrow account which blended the funds that the Debtors needed to confirm their respective plans.[3] The escrow account was opened in Mid-June, 2011, just prior to the commencement of the contested confirmation hearing on the Debtor's plan. The new escrow account allowed the *Debtors* to raise funds until August 31, 2011, although in the RCC North case, the funds to confirm the Debtor's plan were to have been on deposit as of the start of the contested confirmation hearing on June 27, 2011. The new escrow account also set forth new terms and conditions, such as (a) requiring the investors *to review and approve* the orders confirming the plans in *both* of the Debtors' cases; (b) permitting the investors to decide how they wished to allocate their funds, with the investors potentially allocating all of their money to RCC North *or* to RCC South; (c) allowing the two major investors to withdraw their funds from the new escrow account to the extent that the funds on hand exceeded $15 million for both Debtors; and (d) permitting the investors to withdraw their funds from *both* cases, if the orders confirming the plans of reorganization were not final by September 30, 2011. U.S. Bank questioned whether the investors had committed any funds to confirm RCC North's plan. From the Court's standpoint, aside from the failure to commit funds as exhibited by the opening of the

---

**2.** Docket Entry No. 265.

**3.** Exhibit 45, admitted in evidence at the Debtor's contested confirmation hearing.

3

new escrow account, the Debtor had failed to disclose the pooling of investor funds, with additional terms and conditions, to the creditors and interested parties in the RCC North and the RCC South cases. The Debtors had different assets and different secured creditors, yet no disclosure had been made to either of the secured creditors in the two cases. From the Court's standpoint, it could not proceed with the contested confirmation hearing.

The third critical issue, raised for the first time at the contested confirmation hearing, was that the Debtor had chosen to enter into a substantially different settlement agreement with Eye Level Holdings LLC. U.S. Bank objected to the new agreement, noting that it believed the agreement to be a material modification of the Debtor's plan which would require the Court to deny confirmation of the Debtor's current plan and set a further hearing on a required modification of the Debtor's disclosure statement.[4] The Debtor deflected criticism of its last-minute changes to its plan, by stating that it had entered into a final settlement agreement just prior to June 27, 2011, the start of the contested confirmation hearing, and that it had fully disclosed the settlement agreement in the joint pretrial statement. On the one hand, the Debtor asserted that it could proceed on the new settlement agreement, at the June 27 contested confirmation hearing, because it was an "emergency," and the new agreement was not a material modification. On the other hand, the Debtor also stated that the modification was a material modification, which was why it set forth the proposed terms and conditions of the new settlement agreement in the joint pretrial statement to provide U.S. Bank with the "requisite notice" that might be required under the Bankruptcy Code.

The Debtor misses the point. If the Debtor has proposed material modifications to its plan, there must be further disclosure. Further disclosure requires that confirmation of the Debtor's plan be denied, the disclosure statement be modified, and the Debtor re-solicit acceptances to its plan of reorganization. That has not yet happened. Nor has the Court yet had a hearing to determine whether the Debtor has proposed a material modification to its plan.

---

**4.** U.S. Bank was relying on 11 U.S.C. §§1127 and 1125 (West 2011).

4

Moreover, even if the settlement has recently occurred, setting forth the terms and conditions of the settlement in a joint pretrial statement, filed on June 15, 2011, just prior to the commencement of the contested confirmation hearing, is little or no notice to U.S. Bank and does not meet the requirements of Section 1127 of the Bankruptcy Code. Finally, U.S. Bank has stated that its rights have been materially altered, because if the Bank had been advised of the new settlement, in a timely manner, it would have potentially chosen the election under Section 1111(b).[5]

### 2. *The Court's actions at the hearing on the Debtor's Motion for Reconsideration.*

The Debtor somehow asserts that it was prejudiced by information provided to the Court, in the presence of Debtor's counsel, at a separate hearing on *RCC South's* request that its exclusivity period to obtain acceptances to its plan be extended. The hearing in the RCC South case occurred on June 29, 2011, just after the contested confirmation hearing in this case had commenced on June 27, 2011.

First, the Debtor has inaccurately stated what happened at the June 29 hearing in the RCC South case. Counsel for SFI Belmont LLC ("Belmont") appeared at the hearing, and stated that she had been blind-sided by counsel who represented RCC North and RCC South. She stated that she had obtained Exhibit 45 and other exhibits from the contested confirmation hearing in the RCC North case, and felt that both Debtors did not have funds committed toward confirmation. She also stated that the deposition transcripts of the principals in the RCC South case reflected that RCC South (a) had engaged in improper solicitation of their investors, violating federal and state securities laws, (b) would not obtain new, substantial value from their

---

**5.** 11 U.S.C. §1111(b) (West 2011). The election would have permitted U.S. Bank to have its allowed claim, in the full amount of over $60 million, to be secured by the Debtor's real estate and other assets, with the Bank to be paid its allowed claim, over time, in an amount equal to the current value of its collateral as of the time of confirmation.

5

investors, in violation of the new value exception to the absolute priority rule,[6] and (c) had materially modified its plan, which would require denial of confirmation of its plan, requiring RCC South to modify its disclosure statement, and re-solicit all creditors and interested parties.[7] In response to the concerns of RCC South's counsel that Belmont's counsel was relying on new information, the Court granted RCC South's counsel additional time (a) to get a transcript of what Belmont's counsel had just stated on the record, and (b) if appropriate, to have RCC South file a supplement, with any supporting declarations or affidavits. Subsequently, on July 1 and July 6, counsel for RCC South did file a Supplement with declarations from several individuals in support of its Motion to Extend. The Court, thus, gave RCC South every opportunity to submit affidavits or declarations in support of its position. Indeed the very declarations submitted by RCC South were largely from the same individuals who had been deposed by Belmont.[8] Importantly, RCC South and Belmont requested that the Court review the deposition transcripts and the supporting declarations in chambers and determine whether the RCC South Motion to extend the exclusivity period to obtain acceptances should be granted or denied, or a further hearing should be conducted on the matter.

As to RCC South's statements at the hearing on the Motion to Extend the Exclusivity Period that somehow the deposition transcripts of its own principals could not be submitted by *opposing counsel,* the Local Rules of this Court, the Federal Rules of Evidence, and case law provide otherwise. Local Rule 9014-2, Hearing on Contested Matters, states

---

**6.** See Bank of America Nat'l Trust and Sav. Ass'n v. 203 LaSalle Street Partnership, 526 U.S. 434, 119 S. Ct. 1411, 143 L.Ed 2d 607 (1999).

**7.** For instance, counsel for Belmont stated that Cavan Management Services was no longer the manager of RCC South, since it had transferred its employees, and presumably its assets, to a newly formed, related entity named Cavan Management Company.

**8.** Belmont provided the June 20, 2011 deposition transcript of David Cavan, and the June 21, 2011 deposition transcript of John Prince. RCC South submitted the declarations of David Cavan and John Prince. RCC South also submitted the declaration of Gary Burton, but as noted in the text below, he testified on behalf of Cavan Management Services as the manager of RCC North at the June 27 contested confirmation hearing.

6

> Pursuant to Bankruptcy Rule 9014(c), all hearings scheduled on contested matters will be conducted **without** live testimony [emphasis added] except as otherwise ordered by the court. If, at such hearing, the court determines that there is a material factual dispute, the court will schedule a continued hearing at which testimony will be admitted.

Thus, the Local Rules of this Court contemplate that the parties will submit affidavits or declarations in support of their respective positions. Therefore, there was nothing improper in Belmont's decision to present the deposition transcripts of those controlling RCC South in requesting that RCC South's Motion to Extend the Exclusivity Period be denied. Moreover, the use of declarations or affidavits in support or in opposition to a contested matter is not unusual.

Federal Rules of Evidence 801(d)(1) and (d)(2) provide that a sworn statement or a deposition of the party under oath may be introduced into evidence by counsel for the opposing party to impeach the party or deponent, or as an admission by the party against whom opposing counsel is seeking to introduce the sworn statement. Thus, it was appropriate for Belmont's counsel to use the statements under oath of the individuals in control of RCC North and RCC South in support of her position that they had not been candid with her or the Court.

The Ninth Circuit decision of California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 699, 98 L.Ed.2d 650 (1988) also states that if a party has submitted a sworn statement or declaration in support of its position, and opposing counsel has submitted evidence which calls into the question the veracity of those statements, the initial party then carries a heavier burden to produce credible evidence in support of its position. Thus, if Belmont's counsel produces the deposition transcripts of those individuals in control of RCC North and RCC South, which calls into question what has previously been disclosed to the Court, it is then incumbent upon RCC North or RCC South to provide further evidence in support of their positions.

As to RCC North's next allegation that the Court's consideration of the deposition transcripts of the controlling individuals of RCC South, under oath, is somehow "extra-judicial," or presumably outside the usual course of justice, such an allegation is incorrect. Belmont's

7

counsel provided the deposition transcripts of Mr. David Cavan and Mr. John Prince who have been acting on behalf of RCC North and RCC South. Mr. Cavan is the sole member and President of Cavan Management Services. Cavan Management Services manages RCC North and RCC South.[9] Cavan Management Services is also the manager of Raintree Corporate Center Holding, LLC, which is the sole member of RCC North and RCC South.[10] Mr. John Prince has been appointed chief restructuring officer of RCC North and RCC South.[11] These are the same individuals that shape the operations of the RCC North and RCC South. Indeed, apparently to refute the allegations set forth by Belmont's counsel, counsel for RCC South submitted the declarations of the very same Mr. Cavan and Mr. Prince. RCC South also submitted the declaration of Mr. Gary Burton, who is the Vice President of Cavan Management Services. However, Mr. Gary Burton is also connected with RCC North, having testified on behalf of Cavan Management Services, in its role as manager of RCC North at the June 27 contested confirmation hearing.

When RCC North introduced Exhibit 45 into evidence at the June 27 contested confirmation hearing, *it* connected the RCC North case with that of RCC South. As noted above, the new escrow account allowed investors until August 31, 2011, well beyond the start of the RCC North contested confirmation hearing, to approve documents concerning their investments. The investors also were allowed to request a return of their investments if the Court dismissed or denied confirmation of the RCC North plan and/or the RCC South Plan by August 31, 2011. If the plans of RCC North or RCC South became effective on different days, the investors could

---

**9.** See Docket Entry No. 67, the Disclosure Statement, as amended, at Entry No. 89 in the RCC North case, and Docket Entry No. 70, the Disclosure Statement, as amended, at Entry No. 120 in the RCC South case, Case No. 2:10-bk-23475-SSC.

**10.** See Schedules at Docket Entry No. 27 in RCC North and Docket Entry No. 32 in RCC South which list RCCH as the sole member of each Debtor.

**11.** See Docket Entry No. 63 in the RCC North case, and Docket Entry No. 68 in the RCC South case, Case No. 2:10-bk-23475-SSC.

8

elect to provide their funding for either RCC North or RCC South. September 30, 2011 was also set as the last date for all conditions precedent to be removed in both cases.

In the Motion for Reconsideration, the Debtor once again relies on Exhibit 45 in support of its request that the Court set aside the order vacating the stay as to U.S. Bank, and allow RCC North to proceed with the contested confirmation hearing. By relying on that Exhibit, RCC North has put squarely at issue what the controlling individuals of the Debtor have stated under oath–whether those statements were made in the RCC North or the RCC South case. And those statements may become critical in determining whether RCC North has provided adequate disclosure to its creditors and interested parties, or whether it must start the process of approval of the disclosure statement and re-solicitation of its creditors and interested parties over again. For instance, if Messrs. Cavan and Mr. Prince state, at their depositions, that Cavan Management Services manages RCC South, and they further add that Cavan Management Services no longer has any employees, those statements become relevant in the RCC North case, since RCC North relies on Cavan Management Services to manage its operations as well. Because of the connections of the two cases, a material failure to disclose in one case may become a material failure to disclose in the other. The Court only discovered the connection when the RCC North Debtor made it an issue at the June 27 contested confirmation hearing.

RCC North also questions whether the Court reversed its approval of the disclosure statement, rejected the plan as a matter of law, and rejected the parties joint pretrial statement somehow showing bias or prejudice. However, it was RCC North that presented evidence which appeared to be material modifications to its plan in contravention of Section 1127 of the Bankruptcy Code. The Court has an independent duty to determine whether the Debtor's plan should be confirmed. In re Acequia, 787 F.2d 1352 (9th Cir. 1986). As a part of that process, the Court must separately analyze whether the Debtor has made material changes to its plan of reorganization, such that the Court must require the Debtor to amend its disclosure statement to be consistent with Section 1125, and then to re-solicit votes on its plan of

9

reorganization.[12]

As pointed out by counsel for U.S. Bank at the hearing on the Motion to Disqualify, the Court effectively granted the Debtor's Motion for Reconsideration. It's hard to succeed on an argument that the Court is biased or prejudiced when the relief requested would have been granted. Again, Debtor's counsel does not completely describe what happened at the hearing on the Motion for Reconsideration. The Court offered to vacate its order vacating the stay, effectively putting the automatic stay back in place, and allow the Debtor to proceed to a hearing as to whether the Debtor had materially modified its plan such that it would have to start the disclosure process over again and re-solicit acceptances to its plan. Counsel for the Debtor then stated that such relief did not help, because U.S. Bank would be proceeding to its hearing on confirmation as to its plan, and since U.S. Bank had not impaired any creditors or parties in interest, it intended to proceed toward immediate confirmation of its plan under Section 1129(a). However, the fact that the Debtor ultimately chose not to proceed with what the Court offered should not be held somehow against the Court.

*3. The Court's returning from vacation to hear the matter.*

The Debtor states that this judge should be disqualified because she came back from vacation to hear the Motion to for Stay Pending Appeal. As the Court stated at oral argument on the Motion to Disqualify, it makes every effort to hear matters to which it is assigned. It has, for instance, called in from the Ninth Circuit conference to hear a matter, with

---

**12.** Tangentially RCC North questioned the Court's ruling as to the parties' agreement that the Debtor had complied with Section 1129(a)(10). However, the Debtor did not reflect the complete ruling or the true concern of the Court. U.S. Bank did not dispute that it stipulated that the Debtor had complied with Section 1129(a)(10). U.S. Bank, however, did state that the Debtor did not propose its plan in good faith, a separate requirement under Section 1129(a)(3). Debtor's counsel asserted that the stipulation under Section 1129(a)(10) precluded U.S. Bank from proceeding with presenting evidence under Section 1129(a)(3). The Court simply disagreed with the Debtor's position, noting that U.S. Bank could oppose confirmation on the basis that the Debtor had proposed its plan in bad faith.

10

counsel appearing in the courtroom to present their positions. The Court had flexibility in its vacation schedule, so it rearranged some matters, and came in to hear the Motion for Stay Pending Appeal.[13] Such flexibility should not be a basis to disqualify a judge.

*4. Case law under Section 455 and relevant analysis.*

The Debtor has filed this Motion pursuant to 28 U.S.C. Section 455 (West 2011). Section 455(a) states, "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." see also Liteky v. U.S., 510 U.S. 540, 114 S.Ct. 1147 (1994). A party's perception alone that a Judge may have made procedural or substantive errors is not a basis for recusal. F.J. Hanshaw Enters., Inc. v. Emeral River Dev., Inc., 244 F.3d 1128, 1145 (9th Cir. 2001). The Court need not recuse itself from a case merely because a party is unhappy with its decision. Liteky v. U.S., 510 U.S. 540 (1994); see also U.S. v. Wilkerson, 208 F.3d 794 (9th Cir. 2000); In re Goodwin, 194 B.R. 214 (9th Cir. BAP 1996). What the Debtor is unhappy about is that the Court held its counsel to the statements that he made on the record, relying on the doctrine of judicial estoppel, and the Court believed that the Debtor had so modified its plan that the Court needed to conduct further proceedings on whether the Debtor must provide further disclosure to its creditors and interested parties under Section 1125 and re-solicit votes on its plan. The Debtor was, and is, unhappy with the procedural and substantive decisions of this Court. However, that is not a basis for this judge to disqualify herself from hearing this case.

Counsel for the Debtor cites to the United States Supreme Court case of Caperton v. A.T. Massey Coal Co., 129 S. Ct. 2252 (2009). In that case, the Supreme Court stated, "The inquiry (for recusal under 455(a)) is an objective one. The Court asks not whether the judge is

---

**13.** Debtor's counsel attempts to make much of the fact that the judge's law clerk had notified Debtor's counsel that the judge would be on vacation for the next two weeks. That was a true statement. As previously noted, the judge changed her schedule to accommodate the parties.

11

actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" Id. at 2262 [internal quotations in original]. The Court has outlined above what happened in these proceedings. The Court sees no objective basis for disqualification under such circumstances.

Counsel for the Debtor also cites extensively to Hurles v. Ryan - - - F.3d - - - - , 2011 WL 2641287 (9th Cir. 2011). That case involved a state prisoner that had filed a writ of habeas corpus. The prisoner appealed his murder conviction and death sentence. The facts of the case were unusual in that the trial judge became involved as a party in an interlocutory appeal, was denied standing to appear as an adversary, and then proceeded to preside over a murder trial. The Ninth Circuit found that the state court judge should have recused herself, and that certain statements she made about the case indicated a prejudgment against the prisoner and raised an appearance of bias. The judge made troubling statements about the merits of the case long before evidence had been presented. Further, the Ninth Circuit found that certain statements she made challenging defense counsel's professionalism raised an appearance of bias. The judge challenged the prisoner's attorney's professionalism, and questioned whether counsel was ethically bound to withdraw from a case counsel did not feel she could represent in a competent manner. The facts in such an unusual case are not relevant to what has transpired in this bankruptcy case.

What counsel does not focus on is that it is a relatively high standard to disqualify a judge for not being impartial based on a bias developed during the course of a matter. The Ninth Circuit stated:

> Typically, a judge's partiality must be shown to be based on information from extrajudicial sources, although sometimes, albeit rarely, predispositions developed during the course of a trial will suffice. 1145*1145 *See Liteky v. United States,* 510 U.S. 540, 554-55, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). In the instance where the partiality develops during the course of the proceedings, it can be the basis of recusal only when the judge displays a deep-seated and unequivocal antagonism that would render fair judgment impossible. *See id.* at 555, 114 S.Ct. 1147.

12

F.J. Hanshaw Enterprises v. Emerald River Development, Inc., 244 F.3d 1128, 1144-45 (9th Cir 2001). The Court has now set forth, in detail in several decisions, the reasons for its actions. On an objective basis, the Debtor has made no showing to meet the standard in Hanshaw, or any other decision of the Ninth Circuit or the United Supreme Court, which would warrant the disqualification of this judge.

### III. CONCLUSION

The Motion to Disqualify this judge from hearing matters in the RCC North case is denied. The Debtor has shown no basis, in fact or law, to grant the motion. The Court will execute a separate order incorporating this decision.

DATED this 20th day of July, 2011.

*[signature]*

Honorable Sarah Sharer Curley
United States Bankruptcy Judge

13